**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI**
**WESTERN DIVISION**

H&R BLOCK EASTERN
ENTERPRISES, INC.
    a Missouri corporation,
One H&R Block Way
Kansas City, MO 64105

                Plaintiff,

    v.

CLAUDE L. SANKS, JR. a/k/a BOBBY
SANKS,
570 River Bend Road,
Richmond Hill, GA  31324

                Defendant.

Case No. _____

## VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

Plaintiff, H&R Block Eastern Enterprises, Inc. ("H&R Block" or "Plaintiff") seeks the relief set forth in this Complaint against Defendant Claude L. Sanks, Jr. a/k/a  Bobby Sanks ("Sanks").

## INTRODUCTORY STATEMENT AND BRIEF SUMMARY OF THE FACTS

1.      By this action, H&R Block seeks preliminary and permanent injunctive relief, damages, and other available remedies to redress Sanks' flagrant violations of noncompetition and nonsolicitation covenants and other material provisions of the contract he entered into with H&R Block for the sale of a tax preparation business in Savannah, Georgia (the "Business"). The following introductory allegations briefly summarize the relevant facts of Sanks' misconduct.

2.    In late 2011, Sanks became a franchisee of H&R Block. During this time, the Business was operated as an H&R Block franchise.

3.    In late 2014, H&R Block paid Sanks $1,150,000 to buy back his then-franchised Business under an Asset Purchase Agreement ("APA").

4.    Sanks explicitly represented and warranted to H&R Block in the APA that he owned the Business, had all authority necessary to transfer it to H&R Block, and would do so under the APA.

5.    However, shortly after the deal closed, Sanks' sister, Cathy Conaway ("Conaway"), reopened an office at the primary location previously occupied by the Business, which Sanks had told H&R Block it needed to vacate. There, Conaway began operating a competing business under the very same trade name and using the same telephone number, website, and other assets Sanks had purported to sell to H&R Block under the APA.

6.    When H&R Block challenged Conaway's competing operation, however, Conaway claimed that her (and Sanks') mother, who is reportedly in a coma, is the true owner of the Business, that Conaway has her mother's Power of Attorney, and that Sanks did not have authority for its sale.

7.    Upon information and belief, Sanks misrepresented his claimed ownership interest in and/or ability or intent to transfer the Business to H&R Block.

8.    Sanks' breach of this fundamental representation and warranty has materially deprived H&R Block of the benefit of its bargain, including because a substantial portion of the Business has continued to patronize Conaway's operation of the reopened location of the Business.

9.     Indeed, H&R Block's clients who go to Conaway's competing business most likely (incorrectly) believe they are simply returning to the same business that prepared their tax returns last year (which was the H&R Block franchise operated by Sanks), without even realizing that a sale has taken place.

10.     Moreover, H&R Block also recently has discovered that, in further violation of the material terms of the APA, Sanks has been personally competing directly against H&R Block ever since he entered into that contract—thereby stealing away even more of the Business he committed to transfer to H&R Block.

11.     Sanks was employed by H&R Block to work in the Business last tax season, following the sale, until he resigned his employment with H&R Block at the beginning of this year, ostensibly in order to move to North Carolina.

12.     Following his resignation, H&R Block has learned from the clients coming to the office where Sanks worked that both during and since his employment Sanks has been actively competing against H&R Block within the Savannah metropolitan area for the very clients he agreed to transfer to H&R Block for more than $1.1 million.

13.     Indeed, during his employment with H&R Block, Sanks would meet H&R Block clients at his H&R Block office but actually prepare their returns (and be paid for those tax preparation services) through a competing company that was not affiliated with H&R Block.

14.     Moreover, and contrary to what he told H&R Block about moving to North Carolina when he quit, Sanks has, in fact, gone to work at a franchise-owned office approximately 6 miles away from the H&R Block office where he worked prior to his resignation in January.

3

15.     Already this tax season, H&R Block has confirmed that Sanks has provided tax preparation services at the franchise-owned office to <u>at least 109</u> of the clients listed in the APA, who he expressly agreed not to solicit or serve in competition with H&R Block for a specified period following the sale (which period is still running).

16.     Sanks' conduct directly breaches the noncompetition and other covenants he committed to honor under the APA.

17.     Sanks' violations, which are occurring in the heart of the critical tax season, are causing immediate, ongoing and irreparable injuries to H&R Block, including loss of client relationships, goodwill and other interests H&R Block paid $1,150,000 to acquire from Sanks in 2014 and which H&R Block has invested in to maintain and grow since that time.

18.     Accordingly, H&R Block brings this action for urgent preliminary and permanent injunctive relief to enforce Sanks' contractual duties to H&R Block, damages to compensate for its losses, and additional remedies as set forth below.

## THE PARTIES

19.     Plaintiff H&R Block is a Missouri corporation with its principal place of business at One H&R Block Way, Kansas City, Missouri 64105. H&R Block is engaged in the highly competitive business of providing financial, tax preparation, and related services to individuals and companies throughout the United States.

20.     Upon information and belief, Defendant Claude L. Sanks, Jr., is a citizen of Georgia who resides and may be served at 570 River Bend Road, Richmond Hill, GA 31324. Claude L. Sanks, Jr., also goes by and is referred to by others as "Bobby Sanks."

21.     Sanks is not a citizen or resident of the State of Missouri. Thus, his citizenship is completely diverse from that of H&R Block.

4

## JURISDICTION AND VENUE

22.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C.

§ 1332 because there is complete diversity of citizenship between the parties, and the amount in

controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

23.     Personal jurisdiction and venue is proper in this District because Sanks

contractually agreed to venue and jurisdiction in this Court.

24.     Specifically, under the APA, H&R Block and Sanks agreed to be bound by a

"Governing Law; Jurisdiction; Venue" provision that states:

> Each party hereby irrevocably and unconditionally agrees that any actions, suits
> or proceedings arising out of or relating to this Agreement will be litigated, if at
> all, before the United States District Court for the Western District of Missouri
> located in the City of Kansas City, or as to those lawsuits to which the Federal
> Courts of the United States lack subject matter jurisdiction, before a court located
> in the State of Missouri in the City of Kansas City (and each party agrees not to
> commence any action, suit or proceeding relating thereto except in such courts),
> and further agrees that service of any process, summons, notice or document by
> U.S. registered mail to the address of each party will be effective service of
> process for any actions, suit or proceeding brought against such party in any such
> suit.  Each party hereby irrevocably and unconditionally waives any objection to
> the laying of venue of any action, suit or proceeding arising out of this Agreement
> or the transactions contemplated hereby, in the United States District Court for the
> Western District of Missouri located in the City of Kansas City or the courts of
> the State of Missouri in the City of Kansas City, and hereby further irrevocably
> and unconditionally waives and agrees not to plead or claim in any such court that
> any such actions, suit or proceeding brought in any such court has been brought in
> an inconvenient forum.

APA § 5.18.

25.     In addition, venue in this District is proper pursuant to 28 U.S.C. § 1391(b)(2)

because a substantial part of the events giving rise to these claims occurred in this District.

## SANKS' BUSINESS BECOMES AN H&R BLOCK FRANCHISEE

26.     On or around December 12, 2011, Sanks executed a Franchise License

Agreement, a Conversion Agreement and various other documents (together, the "Franchise

5

Agreements") to convert his Savannah tax Business, then-called "Sanks Income Tax and Business Services," to an H&R Block franchise.

27.     From 2012 until 2014, Sanks operated the Business as an H&R Block franchise under the Franchise Agreements for several years, through offices located at 5669 Ogeechee Road, 5710 Ogeechee Road, and 101 Little Neck Road in Savannah, Georgia.

## SANKS SELLS THE BUSINESS TO H&R BLOCK PURSUANT TO THE APA

28.     In or around 2014, Sanks negotiated with H&R Block for the sale of his then-franchised Business to H&R Block.  At that point, the Business was still operating at 5669 Ogeechee Road under the name Sanks Income Tax and Business Services and 101 Little Neck Road in Savannah, Georgia under the name H&R Block.[1]

29.     Throughout these negotiations, Sanks held himself out as the owner of the Business, with full authority to transfer all rights therein to H&R Block.

30.     The parties' negotiations culminated on November 17, 2014 with Sanks' execution of the APA with H&R Block, under which Sanks agreed, *inter alia*, that he would transfer "substantially all of the assets" used in the Business to H&R Block.  APA at 1.  A true and correct copy of the APA is attached as **Exhibit 1** to this Verified Complaint, and is hereby incorporated by reference in full herein.

31.     Section 1.1 of the APA includes a specific list of the Assets that Sanks sold and committed to transfer to H&R Block, including, among other enumerated things:

- "all right, title and interest in and to Seller's Business" (subject to narrow exceptions not relevant here);

- "all goodwill associated with Seller's Business";

---

[1] Both offices were operating as H&R Block franchise offices—the 5669 Ogeechee Road location was not branded as an H&R Block office, while the 101 Little Neck Road office was branded as an H&R Block office.

6

- "all of Seller's right and interest in and to all lists, files and copies of all customers' tax returns and all other customer data";

- "all of Seller's right and interest in and to the telephone and directory listings for Seller's Business";

- "all of Seller's right title and interest in [the] trade names and service marks used in Seller's Business" (which, as noted, included, among others, "Sanks Income Tax and Business Services"); and

- "all other property and assets, tangible or intangible, used in connection with Seller's Business."

*Id.* § 1.1.

32.      Consistent with Sanks' representations to H&R Block before the APA was executed, Sanks made numerous express, affirmative representations in the APA that he could and would transfer all of these assets of the Business to H&R Block.

33.      For example, Sanks expressly represented that he "own[ed] a tax return preparation business with offices located at 5669 Ogeechee Road, Savannah, GA 21405 and 101 Little Neck Road, Savannah, GA 31419 . . . ." APA at 1.[2]

34.      Sanks also explicitly represented and warranted to H&R Block that he had "good and marketable title to Seller's Business and all of the Assets being transferred to Purchaser pursuant to this Agreement." APA § 3.1.

35.      Additionally, and in order to protect H&R Block's legitimate interests and significant investment in the Business, Sanks agreed to honor certain covenants of

---

[2] The APA contains a typographical error as to the ZIP code for the 5669 Ogeechee Road location. The ZIP code of that location is 31405, not 21405.

7

noncompetition, nonsolicitation, and confidentiality in Sections 5.1 through 5.3 of the APA ("the Covenants"). *Id.* § 5.1–5.3.

36.     In connection with these Covenants, Sanks agreed and explicitly acknowledged that, as the result of his involvement in his Business and operation of an H&R Block franchisee he had "acquired confidential information regarding Seller's Business and the business of Purchaser, and acknowledge[d] that all such information constitutes trade secrets, the disclosure of which would cause Purchaser substantial loss." *Id.* § 5.1.  Sanks further agreed "that his extensive experience in the tax return preparation business would enable [him] to compete effectively with Purchaser in the preparation of tax returns and the performance of related services, including filing tax returns electronically, thereby damaging Purchaser's business and its goodwill." *Id.*

37.     Among the Covenants Sanks committed to honor as a necessary part of the APA, Sanks agreed to protect and preserve H&R Block's confidentiality rights, including that:

> [w]ithout Purchaser's written consent, Seller will not reveal or make known, directly or indirectly, any confidential business information regarding Seller's Business (including, but not limited to, information about or pertaining to the tax return information of any customers of Seller's Business) or the business of Purchaser (including, but not limited to, information about or pertaining to Purchaser's methods and procedures of operation of its business.

*Id.* § 5.1(a).

38.     Sanks also agreed in the Covenants that he would not, for a period of at least five years following the execution of the APA, directly or indirectly:

> a.  solicit, divert or take away any of the employees, customers or patronage of Seller's Business, including, but not limited to the customers listed on <u>Schedule 3.1(b)</u> attached hereto; or
>
> b.  prepare an income tax return for any of the clients listed on <u>Schedule 3.1(b)</u> attached hereto, regardless of the following: (i) where such return is prepared, (ii) where such client resides and (iii) whether Seller accepted such business without soliciting such business in any manner.

*Id.* § 5.3.

39.     In addition, Sanks specifically covenanted with H&R Block that, for a period of at least five years following execution of the APA, he would not do any of the following within the city limits of Savannah, Georgia or within an area extending fifty miles in all directions from the Savannah, Georgia city limits (the "Noncompetition Territory"):

> a.  directly or indirectly (whether as owner, director, stockholder, employee, officer, agent, broker, dealer, lessee, representative or in any other capacity) engage in the preparation of tax returns or the performance of related services such as are performed by Purchaser or its subsidiaries, affiliates or franchisees, including filing tax returns electronically;
>
> b.  assist or have an interest (financial or otherwise, whether as partner, stockholder, or any type of principal or investor whatever) in a tax return preparation business, provided, that ownership of not more than one percent (1%) of the outstanding stock in a corporation traded on a national securities exchange will not of itself be viewed as assisting or having an active interest in a tax return preparation business; or
>
> c.  act as agent for or advisor or consultant to any person, firm, partnership, association, corporation or business organization, entity or enterprise (other than Purchaser) that is about to become directly or indirectly engaged in a tax return preparation business.

*Id.* § 5.2.

40.     Under these agreed terms, for the duration of the provision, Sanks is prohibited to work for any competing tax preparation business within the Noncompetition Territory that is not owned by H&R Block and its affiliates, including that he is not allowed to work for independently-owned franchise operations in the Noncompetition Territory that are not owned by the company. *Id.*

41.     In agreeing to this noncompetition provision, Sanks explicitly acknowledged and confirmed that his "Business extends at least throughout the areas described above and that any activity of the nature referred to in this Section 5.2 by it at any place in such areas would cause irreparable injury to purchaser." *Id.*

9

42.     Sanks further acknowledged and confirmed that H&R Block's "remedy at law for any breach of any of [Sanks'] obligations hereunder would be inadequate, and agree and consent that temporary and permanent injunctive relief may be granted in any proceeding which may be brought to enforce any provision hereof, without the necessity of proof of actual damage." *Id.*

43.     In reliance upon, without limitation, Sanks' representations, warranties, and commitment to honor the Covenants, H&R Block agreed to pay Sanks up to a total of $1,250,000 to purchase the Business.  APA § 1.3.  $1,150,000 of this amount was due at closing and was paid by H&R Block in full at that time.  *Id.* § 1.3(a).  The remaining $100,000 was contingent upon conditions that ultimately were not met.

### SANKS' FAMILY REOPENS A TAX PREPARATION OFFICE AT THE FORMER LOCATION OF THE BUSINESS PURCHASED BY H&R BLOCK

44.     During the negotiation of the APA, Sanks represented to H&R Block that his father owned the building where the 5669 Ogeechee Road office was located, and that the property was being sold through a private sale (and not listed on MLS) to a buyer who planned to either demolish or substantially renovate the building.  Sanks told H&R Block that because of the pending real estate sale, the Business would have to move out of the 5669 Ogeechee Road location.

45.     H&R Block did not want to move the Business from the 5669 Ogeechee location, and made numerous inquiries about the property sale with Sanks.  However, Sanks claimed that he did not have any specific information regarding the property sale, including the name of the realtor or buyer.

46.     Given no choice according to Sanks, as H&R Block took over the Business under the APA, it moved out of the 5669 Ogeechee Road office with the intent, as agreed with Sanks,

10

to consolidate that office of the Business into the 101 Little Neck Road office, and service its clients from that location.

47.     However, shortly after H&R Block moved out of the 5669 Ogeechee Road location, a competing tax preparation business moved into that location and began operations under the trade name "Sanks Income Tax and Business Services" – the very same name that the Business had used in that location leading up to the APA sale.

48.     H&R Block learned that the new, competing tax business at this location was being run by Sanks' sister, Conaway.

49.     Conaway's "new" business at the 5669 Ogeechee Road office was, in reality, the continued operation of the very same Business that Sanks represented he could and would sell to H&R Block.

50.     Conaway not only continued to use the identical trade name, "Sanks Income Tax and Business Services," telephone number ((912) 233-2439), website address (http://www.sanksincometax.com), and other assets that Sanks agreed to sell to H&R Block at the reopened office, but Conaway also continued to hold the operation out as the same Business that had been sold, offering the very same services that the Business had offered (and now offers through H&R Block), including income tax preparation and accounting services. *See, e.g.*, http://www.sanksincometax.com/. A true and correct copy of the relevant pages from the Sanks Income Tax and Business Services webpage is attached as **Exhibit 2** to the Verified Complaint and is hereby incorporated by reference in full.

51.     Indeed, Conaway's "Sanks Income Tax and Business Services" business, which first opened in the 2015 tax season after Sanks made H&R Block vacate the formerly franchised 5669 Ogeechee Road location, represents in multiple places on its webpage that it <u>is</u> the business

11

originally founded by Sanks' parents, Claude and Betty Sanks, which is the very Business Sanks sold to H&R Block under the APA.

52.    By way of illustration, the following excerpt from Conaway's website touts that the company is "CELEBRATING 35 YEARS IN BUSINESS" and proudly displays a plaque congratulating "CLAUDE AND BETTY SANKS FOR A SUCCESSFUL FIRST YEAR [IN] 1980":



http://www.sanksincometax.com/?p=16.

53.    Furthermore, upon information and belief, the competing business now operating at the 5669 Ogeechee Road office is employing at least three former employees of the Business, including Jennifer Brown, Sue Kiley, and Tracy Valentine.

54.    All three of these employees are listed in Schedule 2.3(a) of the APA as employees who Sanks represented would execute an employment agreement with H&R Block to stay on as its employees after the APA closed. However, upon information and belief, all three

12

of them have instead now gone to work for the competing Sanks Income Tax and Business Services business as, respectively, a "Tax Consultant, Customer Service," a "Tax Consultant," and a "Staff Accountant." *See* http://www.sanksincometax.com/?page_id=37.

55.     Also notably, upon information and belief, Conaway is operating her business at 5669 Ogeechee Road through an entity called Sanks Enterprises.

56.     Public records from the Georgia Secretary of State show that before and during the time that the Business was a franchisee of H&R Block, Sanks was the CEO, CFO, and Registered Agent for Sanks Enterprises, which has claimed the 5669 Ogeechee Road address as its principal place of business since at least 2010.

57.     Additional Georgia Secretary of State records further reveal that Sanks did not abdicate his positions in Sanks Enterprises to his family members, including Conaway, until after he executed the APA to sell the Business to H&R Block in late 2014.

58.     Thus, the office currently operating as Sanks Income Tax and Business Services is, in both effect and fact, the very same Business that Sanks represented and warranted to H&R Block he could and would transfer to H&R Block under the APA.

59.     Indeed, after H&R Block learned about the reopening of 5669 Ogeechee Road location as a tax business, H&R Block sent Conaway (as agent for Sanks Enterprises) a letter demanding that the business operating there under the trade name "Sanks Income Tax and Business Services" cease and desist from utilizing the assets that H&R Block had acquired under the APA.

60.     In response to the cease and desist letter, counsel for Conaway contacted H&R Block and informed H&R Block that the Business was a family business, and that Sanks did not have any right to sell it.

13

61.     H&R Block relied on Sanks' representations that he could and would transfer the Business, as promised in the APA, including by entering into that contract and paying Sanks more than $1.1 million thereunder.

62.     However, it is now clear that Sanks did not transfer and may not have had the right to transfer at least a significant portion, if not all, of the Business assets that he committed to deliver to H&R Block.

### H&R BLOCK AND SANKS AGREE TO AN AMENDMENT OF THE APA

63.     After being confronted by H&R Block about the situation with his family, Sanks represented to H&R Block that he would strive to substantially make good on his promise to deliver the Business.

64.     Thus, on January 30, 2015, H&R Block and Sanks entered into an amendment to the APA (the "Amendment"), pursuant to which H&R Block agreed to wait before exercising potential claims against Sanks under the APA in order to give Sanks an opportunity to retain clients of the Business sold to H&R Block.  Under the Amendment, the $100,000 contingent payment under the APA—which Sanks originally was to receive on the sole condition that he remain employed with H&R Block through April 15, 2015 (APA § 1.3(b))—would now be contingent on Sanks achieving an agreed revenue threshold of $856,669 in tax preparation fees between the effective date of the APA through December 15, 2015. Amendment § 1.  A true and correct copy of the Amendment is attached hereto as **Exhibit 3**, and is hereby incorporated by reference in full.

65.     The modification was made to ensure that Sanks would work diligently to retain the clients from the Business, including particularly those who might otherwise patronize

14

Conaway's "Sanks Income Tax and Business Services" without realizing that the Business they had previously patronized for their tax preparation needs was sold to H&R Block.

66.     However, the Business, at least the portion delivered to H&R Block, did not meet the agreed benchmark set out in the Amendment.

67.     Rather, the Business sold to H&R Block suffered a significant downturn during fiscal year 2015. As an H&R Block franchisee, the Business provided tax preparation services to over 5,000 clients. During the 2015 tax season (the tax season immediately following consummation of the APA), however, less than half of those clients were retained by the Business/H&R Block.

68.     Upon information and belief, the vast majority of the more than 2,500 clients that were not retained by the Business/H&R Block instead patronized Conaway's "Sanks Income Tax and Business Services" business at 5669 Ogeechee Road. Because that competing business was operating in the same location, using the same name, phone number, website and other assets of the Business and operating through the same employees, the clients lost to it quite likely would not even have realized that it was not the same Business they had gone to the year before.

69.     Although H&R Block allowed Sanks the opportunity under the Amendment to try to rectify this serious situation and to deliver the level of client relationships and revenues he had purported to offer in the sale, Sanks failed to do so, leaving H&R Block with less than half of the Business it had paid him more than $1.1 million to acquire.

## SANKS COMPETES WITH H&R BLOCK IN VIOLATION OF THE APA

70.     Instead, and in violation of the Covenants Sanks committed to honor in the APA, H&R Block has come to understand that Sanks was working against H&R Block even while the company was affording him this second chance.

71.     Indeed, Sanks has been personally competing with H&R Block in and around the Savannah area—and, specifically, in the Noncompetition Territory—since he entered into the APA, as set forth below.

72.     After executing the APA, Sanks worked for H&R Block until January 7, 2016.

73.     On that date, he voluntarily resigned his employment, supposedly to move to Henderson, North Carolina.

74.     Shortly after he left, however, a client came to the office at 101 Little Neck Road where Sanks had worked, looking for Sanks.

75.     According to the client, he had met with Sanks at the 101 Little Neck Road office in or around March 2015 in order to have Sanks prepare his tax return. However, the prepared tax return the client showed the H&R Block office personnel at the office was a return prepared by Sanks for the client on or around March 11, 2015—i.e., while Sanks was still an H&R Block employee—that identified Sanks as operating under the name "Tax & Accounting Services," with an address of 611 E. Rutherford St., Landrum, South Carolina 29356 and a telephone number of (864) 457-4447.

76.     According to public records, there is no business registered with the South Carolina Secretary of State named "Tax & Accounting Services" located in Landrum, South Carolina.

77.     Upon information and belief, Sanks does not work at the 611 E. Rutherford St., Landrum, South Carolina 29356 address, nor does Sanks live or work anywhere in Landrum, South Carolina or near Landrum, South Carolina.

78. Public information about the South Carolina address listed by Sanks on the return indicates that the location is associated with a tax preparation business called John Biedler & Associates.

79. Upon information and belief, Sanks affiliated himself with John Biedler & Associates, and used that association to e-file returns for H&R Block clients outside of H&R Block's systems in order to steal the company's client relationships and revenues away from H&R Block.

80. Upon further information and belief, Sanks was, and may still be, using the Tax & Accounting Services business as a front to conceal that he was (and is) preparing tax returns in the Noncompetition Territory in competition with H&R Block.

81. In fact, after the office's interaction with the client who first exposed Sanks' improper competitive conduct to H&R Block, H&R Block has heard from numerous clients that Sanks is still providing tax preparation services to H&R Block's clients at an office located at Ways Station Center, 2493 Highway 17 South, Suite C7, Richmond Hill, Georgia 31324.

82. This Richmond Hill address is approximately 6 miles from the 101 Little Neck Road office where Sanks was employed by H&R Block and 8 miles from the Business' other original locations at 5669 and 5710 Ogeechee Road.

83. The office location is, in fact, an H&R Block franchise.

84. The APA's Covenants do not contain an exception that would permit Sanks to work from a franchise-owned H&R Block office. Rather, his involvement with the Richmond Hill office directly violates the Covenants.

17

85.     In fact, the absence of any exception to permit work for a franchisee is intentional, because Sanks' work for an independently-owned franchise diverts H&R Block's revenues and relationships away from it, causing both monetary loss and irreparable injury to the company.[3]

86.     In this case, as of this filing, H&R Block's records related to the Richmond Hill franchise office show that Sanks already has prepared tax returns for approximately 165 clients in that office during this tax season, at least 109 of whom were specifically included in the client list sold to H&R Block, which was attached as a schedule to the APA.

87.     Pursuant to the Covenants, Sanks explicitly could not "solicit, divert or take away" any of the clients listed on that schedule or "prepare an income tax return" for those clients.  APA § 5.3.

88.     Sanks' preparation of tax returns in the Noncompetition Territory in close proximity to the offices of the Business he sold to H&R Block and his other activities described herein violate the Covenants of the APA and are causing direct and irreparable harm to H&R Block.

## COUNT I
### (Breach of Contract)

89.     H&R Block hereby incorporates each and every paragraph of this Complaint as if fully set forth herein.

90.     H&R Block entered into valid contracts with Sanks, including the APA, wherein Sanks agreed, among other things, that he could and would transfer all rights in and title to substantially all of the assets of the Business to H&R Block.

---

[3] The fact that diverting clients from a company-owned business to a franchise location is injurious to H&R Block is strikingly illustrated in this case by the fact that H&R Block paid Sanks more than $1.1 million to convert his franchised operation to an H&R Block company-owned business.

18

91.     In order to protect H&R Block's legitimate interests in the transaction, Sanks also agreed in the APA to abide by restrictions on his competitive conduct, as set forth in the Covenants.

92.     The APA was supported by sufficient consideration, including, but not limited to, the mutual promises of Sanks and H&R Block.

93.     H&R Block performed all of its material obligations under the APA and has otherwise complied with the terms of the APA.

94.     Without limitation to the foregoing, H&R Block has made all payments to Sanks due under the APA, and no future payments under the APA are or will be owed by H&R Block.

95.     Sanks breached the APA by falsely representing and warranting, among other things, that he had "good and marketable title" to the Business and all of the Business' assets transferred to H&R Block under the APA and/or that he would transfer such assets to H&R Block.

96.     Sanks breached and continues to breach the APA's Covenants by, among other things:

        a.      Directly or indirectly engaging in the preparation of tax returns or the performance of related services such as are performed by H&R Block or its subsidiaries, affiliates or franchisees, including filing tax returns electronically, within the Noncompetition Territory;

        b.      Assisting or having an interest in a tax return preparation business within the Noncompetition Territory, including, without limitation, Tax & Accounting Services;

        c.      Acting as an agent for, or advisor or consultant to a person, partnership, association, corporation or business organization, entity or enterprise that is about to become

19

directly or indirectly engaged in a tax return preparation business within the Noncompetition Territory, including, without limitation, Tax & Accounting Services;

       d. Soliciting, diverting, and taking away the employees, clients, and/or patronage of the Business, including without limitation clients included in the sale of the Business to H&R Block; and

       e. Preparing tax returns for clients included in the sale of the Business to H&R Block.

97. Sanks has been unjustly enriched and has unduly profited by breaching the APA.

98. H&R Block has been and will continue to be damaged as a direct result of Sanks' breaches, in an amount to be proved at trial.

99. H&R Block also has been and will continue to be irreparably injured as a direct result of Sanks' breaches, including by the mishandling, disclosure, and use of its confidential information and trade secrets, the loss of its goodwill, the loss of and impairment to its client relationships, and the loss of its attendant current and future revenues.

100. Damages at law would be inadequate.

101. The matter in controversy under this Count exceeds the sum or value of $75,000, exclusive of interest and costs.

## COUNT II
### (Injunctive Relief for Breach of APA Covenants)

102. H&R Block hereby incorporates each and every previous paragraph as if fully set forth herein.

103. There is a substantial likelihood that H&R Block will prevail on its claims for breach of the Covenants in the APA, as illustrated above and by the additional allegations below.

20

104.    H&R Block has lost and likely will continue to lose a substantial number of clients as a direct result of Sanks' breaches.  H&R Block's clients and potential clients will continue to be wrongfully diverted to Sanks and lost by H&R Block if injunctive relief is not granted.

105.    For example and without limitation, during this tax season, Sanks has (to date) prepared over 100 tax returns for clients that were included as part of the sale of the Business to H&R Block.

106.    In the tax preparation industry, and given the seasonal and cyclical nature of the tax preparation business, clients who are lost in one year typically are lost for many years, if not forever.  The lost future revenue streams, lost word of mouth, lost goodwill, and other consequences can never be fully measured, nor compensated by monetary damages.

107.    H&R Block has no adequate remedy at law.  In fact, Sanks acknowledged and agreed in the noncompetition covenant of the APA that H&R Block's "remedy at law for any breach of any of [Sanks'] obligations hereunder would be inadequate . . . ."  APA § 5.2.

108.    Unless the requested preliminary injunction and permanent injunction are issued, H&R Block will continue to suffer irreparable harm due to Sanks' breach of the APA.

109.    If Sanks is not enjoined, upon information and belief, he will continue to breach the APA and/or is capable and likely at any time to engage in conduct in breach of the APA—as he has already done.

110.    Neither Sanks, nor any other person or entity, will be harmed by the entry of the requested injunctive relief because, without limitation, H&R Block simply seeks to enforce the status quo and the contractual provisions that Sanks voluntarily agreed to in exchange for substantial consideration.  However, even if there were to be some harm to Sanks or unknown

others, such harm would be minimal in comparison to the harm that H&R Block will suffer if the injunctive relief is not granted.

111.    Public policy will be served by the entry of the requested injunctive relief as it will promote the public policy of enforcing contractual rights and obligations and avoiding confusion in the marketplace.

112.    The matter in controversy under this Count exceeds the sum or value of $75,000, exclusive of interest and costs.

## ATTORNEY'S FEES

113.    As a result of Sanks' wrongful actions described above, H&R Block retained counsel to prosecute these claims.

114.    H&R Block is, therefore, entitled to recover reasonable and necessary attorneys' fees and costs incurred in the prosecution of this lawsuit pursuant to the terms of the APA, which states, in pertinent part:

> In the event any Party hereto ("**Non-defaulting Party"**) brings an action or suit against another Party hereto (**"Defaulting Party"**) by reason of the reach of any of the covenants, conditions, agreements or provisions set forth in this Agreement (including, but not limited to, a breach of Sections 5.1, 5.2 or 5.3 hereof), the Non-defaulting Party will be entitled to recover from such Defaulting Party all costs and expenses of such action or suit, including reasonable attorney's fees . . . .

APA § 5.5.

## PRAYER FOR RELIEF

WHEREFORE, H&R Block respectfully requests and prays for judgment against Sanks as follows:

A.    Preliminarily and permanently ordering specific performance of Sanks' contractual obligations to H&R Block under the APA;

22

B.     Preliminarily and permanently enjoining Sanks, his officers, agents, servants, employees, and attorneys, and all persons in active concert or participation with them, from violating the terms of the APA, including, without limitation, the Covenants;

C.     Preliminarily and permanently enjoining Sanks, his officers, agents, servants, employees, and attorneys, and all persons in active concert or participation with them, for the time periods set forth in Sections 5.1–5.3 of the APA from directly or indirectly:

      i.     Engaging in the preparation of tax returns or the performance of related services such as are performed by H&R Block or its subsidiaries, affiliates or franchisees, including filing tax returns electronically, within the Noncompetition Territory;

      ii.     Assisting and/or maintaining an ownership interest in any tax preparation business within the Noncompetition Territory, including without limitation the businesses operating as Sanks Income Tax and Business Services, Tax & Accounting Services, and any H&R Block franchisee within this area;

      iii.     Acting as an agent for, or advisor or consultant to a person, partnership, association, corporation or business organization, entity or enterprise that is about to become directly or indirectly engaged in a tax return preparation business within the Noncompetition Territory, including without limitation the businesses operating as Sanks Income Tax, Business Services and Tax & Accounting Services, and any H&R Block franchisee within this area;

      iv.     Soliciting, diverting, and taking away the employees, clients, and/or patronage of the Business, including without limitation clients included in the sale of the Business to H&R Block; and

      v.     Preparing tax returns for clients included in the sale of the Business to H&R Block.

D.     Preliminarily and permanently ordering Sanks, his officers, agents, servants, employees, and attorneys, and all persons in active concert or participation with them, to cease and desist from using in any manner the confidential business information and trade secrets of H&R Block, including, without limitation, H&R Block's client lists and other client information, and to immediately return all such information to H&R Block;

E.     Preliminarily and permanently ordering Sanks, his officers, agents, servants, employees, and attorneys, and all persons in active concert or participation with them, to cease and desist from using any assets purchased pursuant to the APA, and to immediately return all such assets to H&R Block;

F.     Awarding damages in an amount to be proved at trial and/or liquidated damages to H&R Block;

G.     For a disgorgement of profits;

H.     Punitive damages;

I.     Awarding H&R Block any applicable pre- and post-judgment interest;

J.     Awarding H&R Block its costs and attorneys' fees; and

K.     Awarding H&R Block such other and further relief as the Court deems just and proper.

DATED:  March 10, 2016                Respectfully submitted,

**BERKOWITZ OLIVER LLP**

By:  */s/ Anthony J. Durone*
  Anthony J. Durone (MO Bar #43872)
  Stacey R. Gilman (MO Bar #55690)
  2600 Grand Boulevard Suite 1200
  Kansas City, Missouri  64108
  Telephone:  (816) 561-7007
  Facsimile:  (816) 561-1888
  adurone@berkowitzoliver.com
  sgilman@berkowitzoliver.com

***Attorneys for Plaintiff H&R Block Eastern Enterprises, Inc.***

25

## VERIFICATION

COUNTY OF _Chatham_ )
                    )     SS.
STATE OF _Georgia_ )

      The undersigned, _Steven Jensen_ , first duly sworn, states that he is personally familiar with or informed of all factual matters set forth herein and that to the best of his knowledge and belief all facts stated therein are true.

_Steven Jensen_
Steven Jensen
District General Manager
H&R Block Eastern Enterprises, Inc.

Subscribed and sworn to before me
this   _8th_   day of March, 2016.

_Cindy L. Klein_
Notary Public

My Commission Expires:   _2/20/20_



```
CINDY L KLEIN
NOTARY PUBLIC
Effingham County
State of Georgia
My Comm. Expires Feb. 20, 2020
```

Case 4:16-cv-00206-GAF    Document 1    Filed 03/10/16    Page 26 of 27

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on this 10th day of March, 2016, I electronically filed the foregoing document with the Clerk of the Court for the U.S. District Court for the Western District of Missouri using the CM/ECF system.

Service of Plaintiff's Motion for Preliminary Injunction and its supporting documents will be made upon Defendant by a process server who will also serve Defendant with the Summons and the Complaint. An appropriate affidavit attesting to the service of the Complaint, the Summons, the Motion for Preliminary Injunction, and all documents filed in support of the Motion will be filed with the Court's CM/ECF system when it is obtained.

*/s/ Anthony J. Durone*
***Attorney for Plaintiff H&R Block Eastern
Enterprises, Inc.***

27